SCOTT KEITH WILSON, Federal Public Defender (#7347)
RICHARD G. SORENSON, Assistant Federal Public Defender (#12240)
OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Ms. Wang
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KAILIN WANG, <br><br> Defendant. | DEFENSE'S RESPONSE TO UNITED STATES' POSITION REGARDING DETENTION <br><br><br> Case No. 2:24-cr-163 DAK |

Kailin Wang, through counsel and pursuant to 18 U.S.C. § 3142, moves this Court to release her with conditions pending trial in this case. The Bail Reform Act "mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.'" *United States v. Hir*, 517 F.3d 1081, 1085-86 (9th Cir. 2008) (citations omitted). Here, the government as a threshold matter is not even entitled to a detention hearing pursuant to 18 U.S.C. § § 3142(f)(2). Even if is it, there are pretrial conditions the Court can impose that will assure her appearance and safety to the community.

**BACKGROUND INFORMATION**

The alleged conduct in this case occurred several years ago (besides three recent allegations, discussed below): Count 1 (Cyberstalking against AV1) occurred from February 2019 to April 2024; Count 2 (Cyberstalking against AV2) occurred from May 2019 to August 2019;[1] and Counts 3-4 (False Statements) occurred from May-June 2019.  Ms. Wang has been out of custody during this time and only last month did the federal government request a court to detain Ms. Wang.

For the Court's convenience, defense summarizes the alleged conduct in this case and other court cases at issue (to defense counsel's best understanding of the allegations at this time[2]).

I.       **Summary of Allegations Involving AV1.**

Ms. Wang and AV1 met on Tinder in February 2018, went on two dates, and had sexual intercourse which resulted in Ms. Wang becoming pregnant and having a child in November 2018.

In early 2019, AV1 contacted San Francisco Police reporting what he believed were untrue and defamatory statements about AV1 made by Ms. Wang.  In spring 2019, a San Francisco court granted a temporary restraining order, ordering that Ms. Wang, among other things, not harass or threaten AV1 or his family, not directly or indirectly contact them, and not

---

[1]      Although defense's review of the voluminous discovery is ongoing, it appears allegations (or at least the vast majority of allegations) related to AV2 occurred in 2017 to early 2018.  Even the "Background" section of the Indictment lists alleged conduct against AV2 as having occurred from September 2017 to January 2018.

[2]      Defense's summary is based on defense's on-going review of voluminous discovery covering multiple years that the government provided counsel a couple of weeks ago.  The summary is also based on counsel's review of court filings from multiple courts from multiple years, and defense's conversations with various individuals.

harass or inflict serious emotional distress on them.  The San Francisco court also granted custody of the child to AV1 (the child, who was approximately 4 months old at the time, had previously been under the custody of Ms. Wang).  On March 6, 2019, the child was removed from Ms. Wang's residence and given to AV1 who has since remained in his care in California.  Ms. Wang, according to the allegations, made multiple phone calls to California police in March 2019 requesting a welfare check on her child who had recently been removed from her home.  She also made, according to the allegations, various internet posts about AV1 and the child in spring 2019.

Since March 2019, Ms. Wang and AV1 have been involved in a lengthy custody battle in California which continues to this day.  Ms. Wang – who has limited financial means – represents herself in the case.  AV1 – who has substantial financial means – is represented by multiple attorneys.  Ms. Wang has been allowed supervised visitation with the child for several years; she has traveled back and forth from Spanish Fork to California approximately two times per month.  She has also had video visits with the child which she always attends.  Although defense is still in the process of obtaining court filings related to the California custody case, it is defense counsel's understanding that AV1 is in the process of seeking to move out of the country with the child.

On October 23, 2019, Ms. Wang was charged in California with, among other things, two counts of felony stalking against AV1 and one count of felony stalking against AV2 (involving the same allegations as this case).  On that same day, Ms. Wang appeared in court (out of custody).  The court ordered her to surrender her passport which she did the next court date of December 11, 2019.

The California criminal case has been ongoing since 2019 where Ms. Wang has remained out of custody. Only recently in May 2024 (several years after 2019) did the prosecution allege in its *Motion to Amend Complaint* and *Motion to Dismiss* that Ms. Wang committed new offenses or violations of restraining orders which allegations are as follows: (1) on March 3, 2024, the Menlo Park Police Department received an email from Ms. Wang requesting a welfare check on her child; (2) on April 9, 2024, Ms. Wang posted on Twitter that AV1 and his parents were absconding with the child to Denmark permanently and attached a post repeating her abduction claim and included the name of the child; and (3) on April 12, 2024, she filed a reply motion in the California custody case where she included the address of AV1's home.

## II.    Summary of Allegations Involving AV2.

In October 2017, AV2 filed a police report in San Francisco stating that since July 2017, Ms. Wang had been harassing him.  San Francisco police did not take any action at that time.  In November 2017, AV2 reported the alleged harassment to the Spanish Fork Police.  Class-B misdemeanor charges were ultimately filed in Spanish Fork for conduct that allegedly occurred between October 30, 2017 to November 20, 2017.  In February 2019 (after AV1 was in contact with San Francisco police), San Francisco police contacted AV2 again to get more details of the alleged harassment from 2017.  According to AV2, Ms. Wang's harassment against him began September 2017 and lasted until November 2017.  AV2 stated that he never met Ms. Wang in person and that they had only corresponded on dating apps.  The Spanish Fork misdemeanor case was ultimately dismissed on October 31, 2019, due to the California criminal case being filed that included the same conduct.  Ms. Wang has not been in any type of contact with AV2 since 2017.

**III.    Summary of Other Court Cases.**

**1.    New York Case.**

The government's detention motion states that Ms. Wang was previously "convicted in New York of an offense consisting of conduct that amounted to the stalking of a different victim." *Government's Detention Motion* at p. 4.

The New York case involves conduct from 2013.  On May 5, 2014, Ms. Wang pled guilty to Harassment under New York Penal Law 240.26(1) which prohibits a person from threatening to strike or otherwise subject a person to physical contact with an intent to harass, annoy, or alarm another person.  Harassment is a "violation" under New York law which is punishable up to 15 days in jail.  The New York court ordered Ms. Wang to complete therapy which she successfully did.  Due to Ms. Wang's compliance, the court allowed her on November 5, 2014, to withdraw her plea to Harassment, and entered a plea of guilty to Disorderly Conduct (also a "violation") with a sentence of time served with a two-year order of protection.  Defense counsel is unaware of any allegation that she had any subsequent contact with the victim of the New York case.

**2.    Utah County Case.**

In February 2021, the State of Utah charged Ms. Wang in the Fourth Judicial District in American Fork, Utah with multiple counts of forgery (related to forging subpoenas with dates ranging from August 2020 to March 2021) and one count of making a false statement under oath (related to requesting a protective order in March 2019).  Ms. Wang has remained out of custody during this entire case (over three years old) and has attended each of her court hearings (unless excused).

## ANALYSIS

**I.      The Government is Not Entitled to a Detention Hearing.**

As a threshold matter, the government is not entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(2).  Section 3142(f)(2) of the Bail Reform Act provides that the government is only entitled to a detention hearing if the case involves (1) a serious risk the defendant will flee; or (2) a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injury or intimidate a prosecutor witness or juror.

**A.      Ms. Wang is Not a Serious Risk of Flight.**

Contrary to the government's argument in its *Detention Motion*, Ms. Wang is not a serious risk of flight.  She has lived on and off in Utah since she was a child and she has lived with her parents in Utah County for the last several years.  She graduated from Provo High School and Utah Valley University.  She appears at each court hearing (both virtual and in-person) in all of her other court cases.  Defense counsel confirmed with Ms. Wang's counsel in her other cases that she maintains good contact with each of them.  In October 2019, Ms. Wang surrendered her passport as ordered by a California judge in a criminal case; the California court (to defense counsel's knowledge) continues to have Ms. Wang's passport.

In its *Detention Motion*, the government states that Ms. Wang recently told her parents during a jail phone call that she "intends to file an emergency international move away," something which the government argues reflects an intent and desire to leave the country. *Detention Motion* at p. 6.  As background, it is defense counsel's understanding that AV1 would like to move with the child out of the country, an issue currently being addressed in the California custody case.  Although the government has not provided defense counsel with this jail phone call, it appears Ms. Wang's statement relates to litigation involving AV1 wanting to

leave the country with the child.  Furthermore, Ms. Wang's alleged statement does not relate to Ms. Wang wanting to surreptitiously leave the country; rather, the supposed statement relates to filing something with a court.

> **B.      Ms. Wang Does Not Pose a Serious Risk of Obstruction Justice or Threatening or Intimidating Witnesses.**

As observed by one court, the question involving obstruction of justice under the Bail Reform Act "it not simply whether [the defendant's] actions can be considered obstruction, but whether there is a *serious risk* of obstruction in the future."  *United States v. Madoff*, 586 F. Supp. 2d 240, 250 (S.D.N.Y 2009) (emphasis is original).  "To be sure, the court should consider past behavior in assessing the likelihood of prohibiting behavior in the future, but the government needs to show that there is a serious risk that these potential harms exist going forward."  *Id*.

The government is not entitled to a detention hearing because it also cannot show that Ms. Wang poses a *serious risk* of obstructing or threatening or intimidating a witness.  Although the government argues that Ms. Wang poses a serious risk, the vast majority of the allegations in the Indictment relate back to 2017-2019 and the federal government only recently sought Ms. Wang's detention for conduct several years old.

Although defense understands that the detention hearing is not the time to litigate the truthfulness and validity of three new allegations/violations of a California restraining order,[3]

---

[3]      As discussed above, Ms. Wang allegedly recently violated a California restraining order as follows: (1) on March 3, 2024, the Menlo Park Police Department received an email from Ms. Wang requesting a welfare check on her child; (2) on April 9, 2024, Ms. Wang posted on Twitter that AV1 and his parents were absconding with the child to Denmark permanently and attached a post repeating her abduction claim and included the name of the child; and (3) on April 12, 2024, she filed a reply motion in the California custody case where she disclosed the address of AV1's home.

defense provides some insight and context into the allegations to show she is not a serious risk of obstructing justice or intimidating witnesses.

Regarding allegation 1 (that Ms. Wang emailed the police in March 2024 requesting a welfare check), it appears that Ms. Wang emailed the police because she had not seen her child for scheduled visitation times despite her attempts to do so.  She expressed concern in the email for her son's safety and health (she had been informed the child was sick) because she had not physically or virtually seen him in weeks despite her attempts to do so.  It does not appear she even specifically requested a welfare check in the March 3rd email.

Regarding allegation 2, Ms. Wang allegedly included the name of the child in a social media post despite being ordered not to do so.[4]  The post (which included only the name of the child and not any other personal identifying information like the date of birth) was supposedly made at a time – April 2024 – where issues were being litigated in the California custody case as to whether AV1 would be allowed to move out of the country with the child and made at a time when Ms. Wang had not seen her child for visitation times – despite Ms. Wang's attempts to do so.

Regarding allegation 3, an April 2019 restraining order prohibited Ms. Wang from taking "any action, directly or through others, to obtain the addresses or locations of [AV1 and his family]."  Ms. Wang allegedly included in the middle of a pro se court filing the address of AV1. It is unclear from Ms. Wang's pro se motion, but it appears she was objecting to the court in the custody case whether AV1 should be allowed to move with the child out of the country.  The

---

[4]    The order is from a court's "Findings" in the California custody case which states that "[t]he Court enforces the agreement of the parties and orders that [Ms. Wang] shall redact the Minor Child's identifying information from her publicly-accessible internet postings…."

address was listed in the middle of a pro se motion (not on a widely read or available medium such as the Internet or a social media post).

The April 2019 California restraining order also stated that Ms. Wang could not contact AV1 or his family (except as required for court-ordered visitation of the child); that she had to stay away from the person, home, and job of AV1 and his family (except as required for court-ordered visitation of the child); and that she not threaten AV1 and his family.  There are no allegations in the California cases, to defense's knowledge, that she has ever violated one of these orders since it was issued in 2019.

Because the government cannot as a threshold matter show it is entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(2), Ms. Wang requests that the Court determine the conditions of her release.

## II.    A Rebuttable Presumption Does Not Apply.

If this Court grants the government a detention hearing, the rebuttable presumption under 18 U.S.C. § 3142(e)(3) does not apply because Ms. Wang is not charged with any of the crimes listed in section 3142(e)(3).

## III.    18 U.S.C. § 3142(g) Factors Mitigate in Favor of Release.

"In our society liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salermo*, 481 U.S. 739, 755 (1987).  Accordingly, Congress allowed for detention based on unmanageable risk to the community for "the small but identifiable group of particularly dangerous defendants who pose an especially grave risk of the safety of the community." *United States v. Cox*, 635 F.Supp. 1047, 1049 (D. Kansas 1986) (quotations and citations omitted).  To this end,

> Congress intended pretrial detention to be limited to the small, identifiable group of particularly dangerous defendants whose continued pattern of criminal activity shows that

9

they pose a significant risk of recidivism or violent behavior.  Congress did not paint with a broad brush, but with a narrow one.

*Cox*, 635 F.Supp. at 1054 (citation omitted).  "Though allowing pretrial detention, the statute is structured so that every other form of release, including release on conditions and temporary detention, must be considered first."  *Id*. at 1050 (citing omitted).

The Court must consider "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  When "determining whether there are conditions" which permit release under the Bail Reform Act, the courts must consider:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C.A. § 3142(g).  The burden of persuasion regarding risk-of-non-appearance and danger to the community always remains with the government.  *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).  The United States must prove risk of non-appearance by a

preponderance of the evidence and "dangerousness to any other person or the community" by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

Regarding risk-of-nonappearance, Ms. Wang (as discussed above) has lived in Utah with her parents the majority of her life and for the last several years, she attends all of her court hearings in multiple cases, she stays in good contact with her attorneys, and she does not have a passport (which she surrendered in 2019 pursuant to a court order).

Regarding danger-to-the community, the government in its *Detention Motion* discusses alleged conduct involving "stalking campaigns" against AV1 and AV2 and that Ms. Wang engaged in similar behavior against a victim in New York case. All of these allegations (besides three recent allegations) occurred several years ago: in 2013 (the New York case), 2017 (AV2's case), and 2019 (AV1's case). Only now – several years later – is the government arguing that Ms. Wang is somehow a danger to the community and must be detained.

Defense discusses above the three recent allegations, something that supposedly occurred approximately 5 years after the other allegations from 2019. Even if the recent three allegations are true, Ms. Wang was out of custody for over five years attending her court hearings with no alleged violations of the restraining orders or other court orders. She is someone who has shown through several years of compliance that she is a manageable risk.

## IV.    Proposed Conditions of Pretrial Release.

In addition to the standard conditions of pretrial release (such as maintaining a place of residence, having employment, and reporting on a regular basis to pretrial services), Ms. Wang proposes the following additional pretrial conditions that will assure her appearance and community safety:

11

(1) she must not have any contact with AV1, AV2, or their family members (except as court ordered for coordinating child visitation);

(2) she must not post any information on the Internet (including on any social media site) about this case including any posts about AV1, AV2, their family members, or hers and AV1's child; and

(3) she must abide by any other restraining order issued in other courts including the State of California.

## CONCLUSION

Based on the above, defense requests that the Court order Ms. Wang's release subject to complying with conditions of pretrial release.

DATED this 1st day of July, 2024.

*/s/ Richard G. Sorenson*
Richard G. Sorenson
Assistant Federal Public Defender

12