UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

-o0o-


UNITED STATES OF AMERICA,       )
                                )   Case No. 2:24-cr-00163-TS
        Plaintiff,              )
                                )
v.                              )
                                )
KAILIN WANG,                    )
                                )
        Defendant.             )
_____ )



BEFORE THE HONORABLE DUSTIN B. PEAD

---

Tuesday, December 30, 2025

11:30 a.m. to 11:47 a.m.

Motion to Modify Conditions of Release

---

Transcript prepared from an

electronically recorded hearing




Reported by:  Michelle Mallonee, RPR, CCR  (801) 209-4979
351 S. West Temple, #7.130, Salt Lake City, Utah 84101

APPEARANCES


For Plaintiff:

JOEY BLANCH, ESQ.
U.S. ATTORNEY'S OFFICE
111 S. Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
(801) 325-3214
joey.blanch2@usdoj.gov


For Defendant:

RICHARD G. SORENSON, ESQ.
WOJCIECH S. NITECKI, ESQ.
FEDERAL PUBLIC DEFENDER, DISTRICT OF UTAH
46 W. Broadway, Suite 110
Salt Lake City, Utah 84101
(801) 524-4010
richard_sorenson@fd.org
wojciech_nitecki@fd.org


For Victim 1:

DOUGLAS L. RAPPAPORT, ESQ.
LAW OFFICE OF DOUGLAS L. RAPPAPORT
260 California Street, Suite 1002
San Francisco, California 94111
(415) 989-7950
admin@sfcrimlaw.com


* * *

2

Tuesday, December 30, 2025; Salt Lake City, Utah

11:30 a.m.

-o0o-

THE COURT:  Hello, everyone, good morning, and welcome.  My name is Dustin Pead.  I'm a magistrate judge in Salt Lake City, Utah.  Today's date is December 30th, 2025. I'm here in the matter of United States versus Kailin Wang, 2:24-cr-163.

This hearing, which has been conducted in an expedited manner, is taking place by way of Zoom.  And on the screen in front of me, I see Mr. Sorenson, the defendant, Mr. Nitecki here on behalf of the defendant, Ms. Blanch here on behalf of the government, Victim Attorney Douglas Rappaport is with me, and Probation Officer Gaston covering for Officer Mauga, and, of course, my courtroom deputy.

All right.  Let's first talk about why we're holding this so quickly.  I know there were some concerns about a number of documents that got sent to my chambers. We stopped filing them, frankly, because it was improper. But in any event, we had a motion to modify conditions for pretrial release.  That was filed on the 23rd.  And then being in the office on the 29th, the first available date, I looked at it and thought, well, we need to move quickly.

So first, I want to apologize for setting the

3

hearing so quickly, but I thought it was in response to the anticipated need that if I were to grant the motion, there would need to be time for the process to take place.

We received a number of documents from Ms. Wang or her father or both that expressed some dismay over the quick setting of the hearing and suggested that they were being blindsided.  And I guess I want to talk about that here today.

We saw Ms. Blanch's response saying that it wasn't at their request that the hearing was set, which was true. That was my setting based on what I thought was the need for the setting.  But it does put the parties in a difficult position.  First, it put Ms. Blanch in a difficult position where she needed to move quickly with filing anything that she would like.

And then some of the emails that we got -- again, I stopped filing them because you're represented, Ms. Wang. I don't know why you were submitting all these documents and whether it was you or your father.  It looks like your father, you were dictating it.  At least that's what the document says.  And then you were making a request to proceed pro se.  I mean, a lot of strange stuff, to be honest with you.

But at the core of all of it was an apparent statement, I think, or opinion from you, Ms. Wang, that you

4

wanted time to respond to the government's opposition.  And I'm happy to give that, if you want it.

Again, my intent wasn't to put parties at any disadvantage.  But if it disadvantaged anybody, I thought it would be the government.  But, Ms. Wang, if you feel strongly that you would like time to file a written response instead of submitting stuff on your own or through your father or emails to my chambers, that's fine.  I'm happy to give it to you.

So Mr. Sorenson, Mr. Nitecki, I know I put you in a difficult spot too.  Sometimes people are not planning to come into the office during this particular week.

Mr. Sorenson, first to you.  Would you like some time to file a response to the government's objections in writing?

MR. SORENSON:  Thanks, Your Honor.  Defense is ready to proceed today.

THE COURT:  Okay.

MR. SORENSON:  My understanding -- and I'll ask Ms. Wang just to let the Court know this herself.  My understanding is Ms. Wang is comfortable proceeding today and is comfortable with me proceeding as her attorney today.

THE COURT:  And is it Ms. Wang or Ms. Wang?  I'm sorry, have I been mispronouncing it?  Ms. Wang?

THE DEFENDANT:  Wang, thank you.

5

THE COURT: Okay, Ms. Wang. Well, tell me what's been going on. Why are you submitting all the material through your father? It looks like it's material that you're submitting. Can you tell me?

THE DEFENDANT: Yes. I was under the belief, and it could be mistaken, that Mr. Sorenson was away on vacation or at least not in the office when all of this -- so there was some concern there.

THE COURT: And what did you do to clarify that before you submitted documents?

THE DEFENDANT: What do you mean to clarify?

THE COURT: Did you call the office? Did you confirm that he was out?

THE DEFENDANT: Lacey called me and she said that, Rich is not his office, but somehow he checked his email before -- even though he's away from the office, and he will appear for you by Zoom.

I still freaked out because these are all family court filings, and they're excessive, and some were overruled, expired. And V-1 -- V-1's counsel, who is also his custody lawyer who is trying to terminate my parental rights, does have a tendency to misrepresent things.

And as the Court knows, that over 70 or 80 pages were filed and all of these relating to family court documents. I did not think Rich could catch up to all of

6

this, so I had my father write what I wanted the Court to know, because I was worried that Rich was either gone or on vacation and would not be able to review all of these family court documents where I was forced to be pro se.

THE COURT:  So I want to clarify on this point. It sounds to me like -- did you write the documents or have them submitted before or after you confirmed whether Rich would be available -- Mr. Sorenson?

THE DEFENDANT:  After.  After.

THE COURT:  So you confirmed he was available, and then you submitted documents?

THE DEFENDANT:  Oh, no, no, no.  I confirmed that he was gone and -- my belief he was gone because Lacey said he was not in the office, that he was away.

THE COURT:  But they also said he checks his emails, right?

THE DEFENDANT:  Yeah, he did.  But I didn't know if they had enough time to review all of those things.

THE COURT:  And did you talk to Mr. Sorenson before you submitted documents?

THE DEFENDANT:  No, I did not.  I was told he was not in the office.  That is what I was told.  And I --

THE COURT:  Okay.  Well, then, let me figure this out.

When did you call their office and determine

7

whether he was in or not?

THE DEFENDANT:  That morning, I believe.

THE COURT:  Yesterday morning?

THE DEFENDANT:  Yes.  Yes.  And then right after, I asked my father to send the email about the concerns --

THE COURT:  You called the office, and what did the office tell you?

THE DEFENDANT:  They told me that we have a hearing tomorrow, and I was really confused.  I wasn't sure if Joey or Mr. Thygesen's -- Victim 1's attorney asked for this expedited hearing.  As we can see from Ms. Blanch's response that she clarified that no, it was not her that set this really quick.

THE COURT:  Let's just start with the timeline, okay?

THE DEFENDANT:  Sure.

THE COURT:  So I set the hearing.

Did you call Mr. Sorensen's office before or after I set the hearing?

THE DEFENDANT:  After.  After.

THE COURT:  Okay.  And they told you he's -- what did they tell you --

THE DEFENDANT:  Out of the office.

THE COURT:  -- specifically?

THE DEFENDANT:  "He is away.  He is not in the

office."

THE COURT: But did they tell you he would appear at the hearing or that he was available to review the emails?

THE DEFENDANT: They said that he's supposed to be away, and, "We're really shocked that he is reviewing his emails while he is away. But there is a hearing, and it's appearing by Zoom, and you will appear by Zoom, and he will appear by Zoom." And I thought he was on vacation appearing by Zoom.

THE COURT: Okay. So that got clarified.

When did you start submitting the documents to my office? Was it after that phone call?

MR. NITECKI: I'm sorry, Judge. This is Wojciech Nitecki on behalf of Ms. Wang.

Is the Court trying to ascertain whether the Court should consider her filings?

THE COURT: Yes.

MR. NITECKI: Okay.

THE COURT: And whether I should consider them, because she was suggesting that it was sort of an emergency, she had to file them. But if she was told Mr. Sorenson was reviewing emails, those should have come through counsel.

MR. NITECKI: And I think that especially, you know, especially at the outset of this case, there had been

some filings that our client did on her own.  And there have been some communications with district court as well.  So it's not necessarily, as the Court I'm sure is aware, uncommon.

THE COURT:  It wasn't uncommon, but it -- the challenge was it was sort of in lieu of a response to Ms. Blanch.  So for instance, we got the document after Ms. Blanch submitted her filing.  Of course, all this happened yesterday.

And I'm concerned with Ms. Wang, I think, wanting to take over the role of attorney.  For instance, in the email that is purportedly dictated by her father -- or she dictated it and her father drafted the email, she says, "I want to proceed on my own," or, "I'm happy to proceed pro se."  In other words, I think she's assuming authority that she just doesn't have.

MR. NITECKI:  May we have -- before we proceed further, may we be put in a -- I forget what those are called.

THE COURT:  Of course.  Break-out room.

MR. NITECKI:  Break-out room.  Thank you.

THE COURT:  Yeah, let me go ahead and assign one. Can I set it for ten minutes for now, and then you come in whenever you need?

MR. NITECKI:  Yes, thank you, Judge.

10

THE COURT: I guess I'll set it -- it's a default for 30. I'll open the room here, and then we'll hit pause on the recording.

MR. NITECKI: We need no more than five minutes, Judge.

THE COURT: Okay. I'm going to assign you all.

Okay. Mr. Sorenson, there's the opportunity. Everyone else stand by. I'm going to hit pause on the recording.

(Pause in the proceedings.)

THE COURT: All right, I'm back.

So gentlemen, if you can help me. I'm trying to understand the timing, number one. Number two, why did she submit materials not through her attorney, and does that mean she wants to try to proceed pro se? I need to clarify that.

And second, should I consider her filing? And if not, should we give her more time to do it?

And then third, is there anything related to this sort of conduct that should reflect on whether I would grant the modified condition one way or the other?

So Mr. Sorenson, Mr. Nitecki, what can you tell me?

MR. NITECKI: If I may address the Court, Judge.

THE COURT: Yes.

11

MR. NITECKI:  So I'm going to try to do this in reverse order.

THE COURT:  Okay.

MR. NITECKI:  No, this should not play in the Court's determination of whether you should allow her to travel.  You know, Ms. Wang has always taken -- participated quite -- you know, participated in her own defense, not only in this case, but especially she has been representing herself in the, you know, custody case, which, of course, we have no part of, although there is a direct correlation between the cases.  But we can speak about this more later.

I think, you know, I came into this a little late. I just read the pleadings this morning.  I was unaware that our client has filed some things.

I can understand why she would want some things to be considered, considering that there was quite a lot of proffer from the attorney for the victim in the pleadings that Your Honor is asked to consider.

So I think that the best course of action, and we have discussed this with Ms. Wang, is for the defense to file a reply to the response, addressing the evidentiary proffers and the exhibits that have been submitted and their significance.  And for Your Honor, therefore, and our client is in agreement with this, to not consider the pleadings that she had filed.  So the only pleadings that ought to be

12

considered are those that have been filed by the parties. And we have Ms. Wang's agreement that she will not be filing anything else with Your Honor.

So with that, what we are respectfully asking the Court to do is allow us until Wednesday morning of next week to file a reply. And then if we could have, if the Court's business permits, a hearing, not a Zoom hearing but an in-person hearing, to address the motion. That still leaves enough time, we feel in consulting with Ms. Wang, for, if it's adjudicated in her favor, for her to still travel.

THE COURT: So if I understand the timing, reply by close of business tomorrow on the 31st.

MR. NITECKI: No, we're asking for next week.

THE COURT: Oh, the 7th, then.

MR. NITECKI: Yes.

THE COURT: I am at tribal community court and Moab. I guess we've got two options. One is to hold a Zoom hearing sometime on the 9th, probably around 11:30 or 12. Or I could try to set something urgent for the morning of the 12th.

MR. NITECKI: So the morning of the 12th would be an in-person hearing, Judge?

THE COURT: I'm happy to do it in person if the parties would ask for it. That's fine. I guess I need to ask Mr. Rappaport if he could appear.

13

Mr. Rappaport, are you interested in appearing at a future hearing?

MR. RAPPAPORT:  I am interested in appearing; however, my request would be to appear virtually because I'm located in San Francisco.

THE COURT:  Okay.  We'll have to arrange for that Zoom link for him to appear from San Francisco.  So we can do it in person, and then we'll have a Zoom link available for you, Mr. Rappaport.

Ms. Blanch, would Monday the morning of the 12th work for you?

MS. BLANCH:  I'm just double-checking.  Yes, Your Honor, I was supposed to be in trial.  It hasn't been continued yet, but I believe it will be.

THE COURT:  Okay.  If it doesn't for whatever reason, let me know.

MS. BLANCH:  It will be.

THE COURT:  Let's set this for first thing.  I mean, I'm a little concerned about the timing.  I don't want to be predisposed to granting or denying.  I'm not suggesting I would grant, either.  But timing, it's going to make it very, very tight, right?  I mean, that's under -- if that's correct, that's two weeks.

MR. NITECKI:  Let's just, then, do the 9th?

THE COURT:  It's going to be pretty tight, won't

14

it?

MR. NITECKI:  What about the 9th?

THE DEFENDANT:  It can be adjusted, the Danish hearing.  So the trial, the final trial can be adjusted.  So no problem.

MR. SORENSON:  I don't know if the Court heard that, but Ms. Wang is okay with that.  She said she feels the Danish court could be adjusted.

THE COURT:  Okay.  Let's do that.  Let's go at 9:30, then, on the 12th in person, Zoom link available for Mr. Rappaport.

Deadline for responses or replies from Ms. Wang due by close of business on the 7th.

And, Ms. Blanch, any reply that you want to give in writing, I'm going to give that opportunity as well. Let's make that due by noon on the 9th, okay?

MS. BLANCH:  Certainly.  And, Your Honor, I just wanted to clarify for the record, in my haste to get this filed yesterday, I filed it publicly, and I should have filed it under seal.  So I've communicated with Ms. Sparrow, and she's moving that to be an under-seal filing.  That was my mistake.

THE COURT:  Terrific.  So we'll switch 97 to under seal.

MS. SPARROW:  And that's already been done, so we

15

should be good.

THE COURT:  Perfect.  So that's 96.

Ninety-seven, I'll indicate that this -- remember, that's not under consideration.  Parties can provide support from 97 in their new filing, but I won't consider 97.

And then, Ms. Blanch, I did see also Filing 100.  That has the statement in advance, correct?

MS. BLANCH:  Yes, Your Honor.  Those are documents from the Utah state court proceedings.

And I also -- those do not need to be filed under seal.  They were publicly filed documents I obtained from Xchange.

THE COURT:  That was my thought, so I was going to stick with status quo on that.

Thank you.  I think that takes care of everything.

Mr. Sorenson and Mr. Nitecki, what have I missed?

MR. NITECKI:  I can't think of anything for now, Judge.

THE COURT:  Okay.

Ms. Blanch?

MS. BLANCH:  I did note Ms. Wang pointed out a couple of errors in my brief that I had some time this morning to double-check, and she was correct.  So I will either...

THE COURT:  Can you file an errata?

16

MS. BLANCH:  I will file an errata today.

THE COURT:  I think that will help.  And that way, defense doesn't have to go through and sort of pinpoint where those mistakes are one way or the other.

MS. BLANCH:  Right.  Exactly.

THE COURT:  Let's get that filed.

MS. BLANCH:  So I will plan on doing that.

THE COURT:  Perfect.  All right.

Mr. Rappaport?

MR. RAPPAPORT:  Just administratively, court staff will send me a link to the hearing?

THE COURT:  Yes.

MR. RAPPAPORT:  Thank you so much.  Happy New Year.

THE COURT:  Thanks, everyone.  The hearing is concluded, and have a nice day.

(The matter concluded at 11:47 a.m.)

17

COURT REPORTER'S CERTIFICATE


State of Utah          )
                            ss.
County of Salt Lake  )

          I, Michelle Mallonee, a Registered Professional Reporter in and for the State of Utah, do hereby certify:

          That the proceedings of said matter was reported by me in stenotype and thereafter transcribed into typewritten form;

          That the same constitutes a true and correct transcription of said proceedings so taken and transcribed;

          I further certify that I am not of kin or otherwise associated with any of the parties of said cause of action, and that I am not interested in the event thereof.

          WITNESS MY HAND at Salt Lake City, Utah, this 15th day of January 2026.




_____
Michelle Mallonee, RPR, CCR
Utah CCR #267114-7801
Expires May 31, 2026

18