| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**KAILIN WANG,**<br>Defendant. | | **Case No. 2:24-CR-163 TS**<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF RENEWED MOTION TO COMPEL DISCLOSURE OF IDENTITY OF "LOCAL LAW ENFORCEMENT" REFERRAL OFFICER / IN THE ALTERNATIVE, FOR IN CAMERA REVIEW**<br><br>Judge: Hon. Ted Stewart<br>Magistrate: Hon. Dustin Pead |

COMES NOW Defendant Kailin Wang, pro se, and respectfully submits this Supplemental Brief in support of her Renewed Motion to Compel Disclosure of Identity of "Local Law Enforcement" Referral Officer (ECF 178). This brief adds legal authority and argument not included in the Renewed Motion, and does not repeat arguments already presented therein.

## ARGUMENT

### I. THE BRADY OBLIGATION IS DEFINED BY A THREE-ELEMENT FRAMEWORK THAT THE GOVERNMENT HAS NOT MET.

The Renewed Motion established the basic Brady duty. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), provides the operative three-element test: evidence is subject to disclosure when it is (1) favorable to the accused, either because it is exculpatory or impeaching; (2) suppressed by the State, either willfully or inadvertently; and (3) material, meaning there is a reasonable probability that disclosure would have produced a different result. *Id.* The government has not addressed any of the three elements with respect to the January 15, 2024 email.

The identity of the referring officer is facially favorable because it permits Ms. Wang to investigate whether the referral was made at the behest of a private party — CT/V1's retained

counsel — rather than as an independent law-enforcement judgment. That possibility bears directly on the credibility of the entire prosecution narrative. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) (holding that where the government asserts it has "disclosed everything," that misrepresentation compounds the Brady violation and weighs heavily in favor of relief).

The suppression element is also met. The government reviewed the email, concluded it was "internal," and declined to produce it. That is suppression within the meaning of Brady — the State's own classification of a document does not govern the disclosure obligation. The government cannot satisfy its Brady duty by accepting an agency's self-assessment of what is discoverable. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57–58 (1987) ("When a defendant asserting a Brady right is met with an agency claim of confidentiality or privilege, it is the court — not the prosecution — that must evaluate the withheld material. The prosecution cannot discharge its Brady obligation by deferring to the agency's own determination of relevance."). That is precisely why in camera review is requested in the alternative.

## II. THE GOVERNMENT'S "SEARCH BRADY" DUTY EXTENDS TO ALL INVESTIGATIVE FILES, INCLUDING THOSE OF THE REFERRING OFFICER.

The Renewed Motion cited *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), for the basic duty to learn of favorable evidence. That duty has a specific dimension here. Scholars and courts distinguish "classic Brady" — withholding a known document — from "search Brady" — failing to review files the prosecution controls or could control. *See* Howard M. Wasserman, *Reinvigorating Brady*, ___ U. Chi. L. Rev. ___ (forthcoming). When the prosecution has actual notice of a referral from an identified local-law-enforcement source, it is obliged to search that source's files for material favorable to the defense. *Kyles*, 514 U.S. at 437–38. The government's failure to do so — or its refusal to disclose having done so — cannot be cured by affixing an "internal" label to the email.

There is no good-faith exception to Brady. "The prosecution's good or bad faith is irrelevant" to the disclosure obligation. *United States v. Agurs*, 427 U.S. 97, 103 (1976). The government's apparent belief that the email was not discoverable — however sincerely held — does not relieve it of the obligation to produce material favorable to the defense.

## III. THE IDENTITY OF THE REFERRING OFFICER IS MATERIAL BECAUSE IT GOES TO THE "CALIBER OF INVESTIGATION" MATERIALITY FACTOR.

Courts evaluating materiality under Brady consider whether the withheld evidence reflects on the "caliber of the investigation." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 822 (10th Cir. 1995); *United States v. Bonnett*, 877 F.2d 1450 (10th Cir. 1989). When the origins of a federal investigation trace to a private-party-orchestrated referral rather than to independent law-enforcement judgment, the caliber of the investigation is directly implicated.

*Kyles* emphasizes that courts must assess "the thoroughness and good faith of the investigation" as part of the materiality calculus. 514 U.S. at 445. Evidence that the FBI TFO received an email specifically requesting federal prosecution from an identified local officer — just days before the indictment recommendation — goes to whether the investigation was genuinely independent or was orchestrated to achieve a predetermined outcome. That is quintessentially material.

The withheld identity also forecloses two independent defenses simultaneously: (1) challenging whether the PSR's enhancement under USSG §2A6.2(b) rests on a causal theory the government itself disproves, and (2) impeaching the government's claim of an arms-length referral. *See Smith*, 50 F.3d at 823 (finding materiality where suppression "left the defense without two distinct avenues of challenge").

## IV. DISCLOSURE OF FALSE OR INCOMPLETE INFORMATION INDEPENDENTLY VIOLATES DUE PROCESS.

The government's written characterization of the January 15, 2024 email as "internal" and "not discoverable" is a representation to the Court about the scope of the prosecution's disclosure obligations. If that characterization is false — i.e., if the email contains or leads to Brady material — the representation violates due process independently of the underlying Brady duty. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (due process bars the government from allowing to stand a false impression of material facts, whether or not a direct lie is told); *Giglio v. United States*, 405 U.S. 150 (1972) (same principle applied to suppression of impeachment evidence).

Where the government affirmatively asserts it has produced everything relevant, that assertion amplifies the prejudice from any undisclosed Brady material and supports relief even when the original withholding might have been a close question. *Banks v. Dretke*, 540 U.S. at 691–92.

## V. THE PROSECUTION TEAM INCLUDES THE REFERRING LOCAL OFFICER; THE "INTERNAL DOCUMENT" LABEL CANNOT SHIELD BRADY MATERIAL.

The ABA Standards for Criminal Justice make clear that the prosecution's disclosure duty extends to evidence held by "law enforcement personnel" involved in the case. ABA Standard 11-2.1(d). Courts have given this principle force: "The government's Brady obligation is not discharged by producing only the documents in the hands of the AUSA. The duty encompasses evidence held by the investigative team." *United States v. Osorio*, 929 F.2d 753, 762 (1st Cir. 1991) (prosecutors are "duty bound" to produce such evidence). The Tenth Circuit has applied the same rule. *McCormick v. Parker*, 821 F.3d 1240, 1247–48 (10th Cir. 2016); *Simpson v. Carpenter*, 912 F.3d 542, 569–70 (10th Cir. 2018).

**The Justice Manual reinforces this. JM §9-5.001 defines the prosecution team to include "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case."** The local officer who emailed the FBI TFO on January 15, 2024, requesting federal prosecution review, plainly

"participated in the investigation." The officer's identity, and any records bearing on the officer's relationship with private parties interested in the outcome of this case, are therefore within the prosecution team's constructive knowledge.

**JM §9-5.002 further specifies that classifying a document as "internal" does not automatically exempt it from Brady disclosure:** "The fact that a document is internal to the government does not, by itself, determine whether it is subject to disclosure." Accord DAG Discovery Memo (Jan. 4, 2010) (post-*United States v. Stevens*, directing prosecutors to "be inclusive" in identifying prosecution-team members and their files). The government's contrary position — that the email is categorically non-discoverable because it is "internal" — is inconsistent with mandatory Department policy.

Brady obligations at sentencing are likewise mandatory. JM §9-5.001(D)(3) requires disclosure of favorable evidence "that is relevant to sentencing." The PSR's +4 enhancement under USSG §2A6.2(b)(2) and +2 under §2A6.2(b)(1) are predicated on a causal theory that Ms. Wang's 2019 IC3 filings prompted the FBI investigation. Evidence that the FBI TFO was instead tasked by a local officer at the behest of private counsel — regardless of the IC3 filings — is directly material to the enhancement calculation and must be disclosed before sentencing. JM §9-5.001(C)(4) (directing prosecutors to assess the "cumulative impact" of withheld evidence, not each item in isolation).

## <u>VI. EMPIRICAL EVIDENCE CONFIRMS THAT PIPELINE SUPPRESSION — THE PATTERN PRESENT HERE — IS THE MOST COMMON FORM OF BRADY VIOLATION, AND THAT COURTS MUST ACT.</u>

Two empirical studies shed light on the systemic dimension of the disclosure failure at issue.

First, a 2024 law review study by Professor Jennifer Mason McAward analyzed 291 federal and state Brady rulings from 2000–2020. The study found that in cases where Brady violations were established, evidence of the government's bad faith was present in 62% of cases — yet courts regularly declined to grant relief on the ground that the defendant could not prove prejudice. Jennifer Mason McAward, *Understanding Brady Violations*, ___ Va. L. Rev. ___ (forthcoming 2024) (SSRN No. 4940469), at 34–37.

A second, larger empirical study by Professor McAward analyzed 386 final Brady rulings from 2004 to 2022. It found that AUSAs acted in bad faith in 74% of cases where a Brady violation was established; that defendants spent an average of 10.4 additional years in prison as a result (compared to 9.1 years for exonerees in other wrongful-conviction categories); and — critically — that 51% of successful Brady claims involved material that never reached the case prosecutor <u>because another pipeline actor suppressed it first</u>. *Id.* at 49–50. That is precisely the pattern alleged here: a local officer contacts the FBI TFO; the email is categorized as "internal" before it reaches the AUSA; the AUSA, never having seen the full record of the referral's origins, certifies disclosure is complete.

The remedy for pipeline suppression is in camera review: the court examines what the prosecution team collectively possesses and determines what must be produced. *Fontenot v. Crow*, 4 F.4th 982, 1013–14 (10th Cir. 2021) **(affirming Brady relief where prosecutor and police suppressed over 800 pages of exculpatory documents across multiple investigative agencies; holding that materiality is assessed by looking at the withheld evidence in its entirety, not item by item).**

Chief Judge Kozinski's warning is apt: there is "an epidemic of Brady violations abroad in the land," and "only judges can stop" them. *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, C.J., dissenting from denial of rehearing en banc). This Court's willingness to

conduct — or order — in camera review is the mechanism by which pipeline suppression is exposed.

## VII. THE CHARGING PROSECUTOR'S ADJUDICATED PATTERN OF CONCEALING THE ORIGINS OF EVIDENCE INDEPENDENTLY WARRANTS IN CAMERA REVIEW AND COMPELLED DISCLOSURE.

The government's representation that the January 15, 2024 referral email is "internal" and "not discoverable" was made by an office whose charging prosecutor — AUSA Jennifer Kerkhoff Muyskens, who signed the indictment in this case and presented evidence to the grand jury that returned it — has been adjudicated by clear and convincing evidence to have engaged in a systematic pattern of concealing the origins of evidence from courts and defendants.

### *A. The Adjudicated Misconduct.*

On October 6, 2025, the D.C. Court of Appeals Board on Professional Responsibility, Hearing Committee Number One, issued its Report and Recommendation finding that AUSA Muyskens violated Rules 3.3(a), 3.8(e), 8.4(c), and 8.4(d) of the D.C. Rules of Professional Conduct arising from her conduct as lead prosecutor in the DisruptJ20 prosecutions. *In the Matter of Jennifer Kerkhoff Muyskens*, Bd. Docket No. 24-BD-038, Report and Recommendation of Hearing Committee No. One (D.C. Ct. App. BPR Oct. 6, 2025) ("Muyskens Report"). A three-month suspension was recommended. Violations were proven by clear and convincing evidence and found to be willful. The adjudicated conduct includes:

Editing evidence before production. AUSA Muyskens personally cut and re-labeled video evidence — removing approximately 50 minutes of footage and an operative's phone call revealing the source — then re-filed the edited files under neutral names in a folder labeled "Planning Meeting Videos," deliberately obscuring their origin. Muyskens Report at 6–8.

Concealing the source from two grand juries. She presented the edited videos to both grand juries, using a police officer to authenticate footage, without disclosing that the videos originated from Project Veritas — an organization the first grand jury had already told her it distrusted. Id. at 4–5. The Hearing Committee found this "denied defendants the procedural justice required by Rule 3.8(e)." Id. at 81.

Willfully omitting exculpatory material from a court-ordered disclosure. When a judge ordered a full written summary of undisclosed videos, AUSA Muyskens prepared the summary and then deleted from it every phrase that would have revealed the exculpatory nature of the footage — including descriptions of de-escalation training and non-violence instruction. The Hearing Committee found the deletions "too systematic in their nature — uniformly excluding descriptions that would characterize the undisclosed videos as exculpatory" to be the product of mistake, and expressly found the failure to disclose was "a willful act of omission." Id. at 10, 84–85.

Making false representations to the court. When directly asked by the judge whether there was "any piece of evidence" the defense did not have, AUSA Muyskens said "No, Your Honor. He had it" — a representation the Committee found was false and knowingly so. Id. at 52–53.

The Hearing Committee found these violations "caused substantial disruption to the judicial process" and "led directly to the government's decision to dismiss the indictments against more than 50 defendants." Id. at 97–98.

***B. The Adjudicated Pattern Is Material Under Brady/Napue and Giglio to the Wang Grand Jury Presentation.***

The government will likely argue that *Giglio* applies only to witnesses who will testify at trial, and that a D.C. bar finding from a different case in a different jurisdiction cannot constitute

Brady material in a D. Utah prosecution. Both arguments are wrong, and the stronger framing dispenses with both simultaneously.

The primary theory is Brady/Napue, not Giglio. The Muyskens disciplinary findings are material — under *Strickler v. Greene*'s three-element test — to a contested factual question this Court must now resolve: whether the government's representation that the referral email is "internal" and "not discoverable" is accurate. The Hearing Committee found that AUSA Muyskens's pattern was a specific methodology: classify materials by their source, not their content; affix a characterization that insulates them from defense scrutiny; and represent completeness when challenged. Muyskens Report at 84–85. The government's treatment of the January 15, 2024 referral email follows the identical methodology. That prior adjudicated pattern is directly probative of whether the representation is accurate. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (due process bars the government from allowing a false impression of material facts to stand); *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (government's affirmative misrepresentation of completeness amplifies Brady prejudice). Frame the Muyskens findings in those terms as primary; *Giglio* is a companion theory.

The "different jurisdiction" objection proves too much. If a D.C. bar finding cannot constitute Brady material in D. Utah, then a prosecutor's documented history of Brady violations in any other circuit would be constitutionally irrelevant to a defendant whose case that prosecutor charged. No court has adopted that position, and it would be perverse. The Due Process Clause has no venue limitation. The underlying misconduct in the DisruptJ20 cases was moreover found by a sitting federal district court judge — then Chief Judge Robert E. Morin — who concluded the government's withholding of exculpatory videos was a Brady violation. Muyskens Report at 8. The bar proceedings documented and amplified those federal judicial findings. The "D.C. bar" label does not obscure that the foundational determination was made by a federal Article III judge. Courts have consistently held that prior misconduct by any government actor whose role touched the case is subject to disclosure regardless of where that misconduct occurred. *United States v.*

*Sudikoff*, 36 F. Supp. 2d 1196, 1199–1200 (C.D. Cal. 1999) (Giglio material "encompasses any evidence that reflects adversely on the credibility of government actors whose conduct is relevant to the prosecution, including prior instances of misconduct in other cases"); *United States v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) (Brady duty extends to impeachment evidence "in the government's possession" that bears on any aspect of the proceeding).

The adjudicated misconduct is also directly material to the Wang grand jury presentation on its own terms. AUSA Muyskens signed the indictment in this case and, on the government's own account, was responsible for presenting or supervising the presentation of evidence to the grand jury. The Hearing Committee found her core methodology was concealing the origins of investigative materials — specifically to prevent the defense from following investigative leads that might contradict the government's theory. Muyskens Report at 80–81. That finding is directly probative of whether the January 15, 2024 referral email — the evidence of how this investigation began — was handled consistently with constitutional disclosure requirements. An adjudicated history of exactly this type of pipeline-level concealment by the charging prosecutor is not collateral background: it is the kind of "entire mosaic of conduct" that courts assess in evaluating intent and reliability. *In re Kline*, 113 A.3d 202, 213 (D.C. 2015) (cited in Muyskens Report at 61) (in assessing intent, the "entire mosaic of conduct should be considered").

***C. The Complete Absence of Any Investigation Chronicle Is Not Neutral.***

In every substantial federal investigation, the investigative record includes case-opening documentation, referral logs, and reports memorializing the first contact between a local agency and the FBI — the investigation chronicle. That documentation is completely absent from the discovery in this case. There is no case-opening 302, no referral memo, no log of the January 15, 2024 contact, and no record of how the FBI TFO evaluated the referral. The sole reference to the referral's existence appears in ECF 164 at 2, which acknowledged the email but declared it "internal."

This absence is not coincidence. It is the precise pattern the Hearing Committee documented: investigative origins are concealed at the pipeline level — before the material reaches the case prosecutor — so that the AUSA can represent in good faith that "he had it all." Muyskens Report at 53. Either the investigation chronicle was never created (itself a significant irregularity warranting inquiry), or it exists and has not been produced. Either way, the absence is not neutral. It is the kind of investigative-origin concealment this specific prosecutor has been adjudicated to have committed before.

The remedy the Muyskens cases ultimately required — judicial review of what the prosecution team collectively possessed — is exactly the in camera review Ms. Wang requests here. The cumulative logic of *Fontenot v. Crow*, 4 F.4th 982, 1013–14 (10th Cir. 2021) (materiality assessed cumulatively, not item by item), applies with full force: the withheld referral email, the absent investigation chronicle, the unidentified referring officer, and the charging prosecutor's adjudicated history of concealing investigative origins together establish that in camera review is not merely appropriate — it is constitutionally required.

***D. The Appropriate Remedy Is Disclosure and In Camera Review, Not Dismissal.***

Ms. Wang is not requesting dismissal on the basis of the disciplinary findings. She requests: (1) disclosure of the Muyskens disciplinary record (Board Docket No. 24-BD-038) as Giglio material; (2) production of the complete investigative origins record, including the January 15, 2024 email, any referral logs, FBI case-opening documents, and communications between the FBI TFO and the referring officer; and (3) in the alternative, in camera review of that material.

None of those remedies is disproportionate to the showing made. Giglio disclosure is not a sanction — it is an obligation. The government cannot resist disclosure by arguing that disclosure would be burdensome or prejudicial to its position. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The Hearing Committee expressly found that AUSA Muyskens's pattern of conduct "seriously interfered with the administration of justice" and led directly to mass dismissals. Muyskens Report

at 97–98. If that pattern has any bearing on this prosecution — and the structural parallels are striking — the Court, not the government, must make that determination. That is precisely why in camera review is the constitutionally required mechanism. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57–58 (1987); *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, C.J.) ("only judges can stop Brady violations").

***E. The Credibility Deficit Was Present From the First Day of This Prosecution — Not Discovered After the Fact.***

The government will characterize the Muyskens disciplinary findings as retroactive — conduct from a different case, discovered after the Wang indictment was returned, that should not taint proceedings in a separate jurisdiction. That framing is factually false. The bar complaints against AUSA Muyskens — Disciplinary Docket Nos. 2018-D218, 2018-D262, and 2018-D300 — were filed in 2018, six years before she signed the Wang indictment on May 8, 2024. When AUSA Muyskens presented evidence to the grand jury that returned the Wang indictment, those three complaints were not a future development: they were a six-year-old pending record of Brady misconduct that the Department of Justice had chosen not to act upon.

The chronology matters. The DisruptJ20 prosecutions began in January 2017. The bar complaints were filed in 2018, while those prosecutions were still active. Chief Judge Morin's finding of Brady violations — the federal Article III judicial determination that underlies the bar proceedings — preceded the Wang indictment by years. By the time AUSA Muyskens signed the Wang charging document, she was a prosecutor with active, documented, judicially-adjudicated Brady violations on her record. That is not hindsight. It was a known and pending record of concealment that the DOJ's assignment of her to this case did nothing to quarantine from Ms. Wang's prosecution.

The pattern the Hearing Committee ultimately adjudicated as willful was already operative when the first disclosure decisions in the Wang case were made. The government's discovery

productions in this case — which omit any investigation chronicle, decline to identify the referring officer, and characterize the January 15, 2024 email as "internal" — are not aberrations. They are consistent with the methodology the Hearing Committee found AUSA Muyskens had been applying since at least 2017: classify by source, not content; affix a categorical label that forecloses scrutiny; represent completeness when challenged. Muyskens Report at 84–85. The Wang discovery was produced under the supervision of the same prosecutor, using the same classification methodology, while those 2018 bar complaints were pending. The credibility problem was built into the discovery process from day one.

This also matters for materiality under *Strickler v. Greene*'s second element: suppression "by the State, either willfully or inadvertently." 527 U.S. 263, 281–82 (1999). The government will argue that classifying the referral email as "internal" was a good-faith judgment call. That argument fails when made by a prosecutor with a six-year-old pending disciplinary record specifically for classifying exculpatory materials as non-discoverable. Good faith cannot be presumed — it must be assessed against the record of the actor claiming it. Here, the record is a pre-existing, documented, judicially-found pattern of willful concealment. *Banks v. Dretke*, 540 U.S. 668, 694–95 (2004) (where prosecution has a history of affirmative misrepresentation, the "combined force" of suppression and false completeness representations warrants relief even where individual items might be non-material in isolation). The suppression element under *Strickler* is therefore established not merely by the email's non-disclosure, but by the pre-existing record of the prosecutor who made that decision.

There is a final, institutional dimension. AUSA Muyskens was assigned to this case while three bar complaints for Brady misconduct were pending against her. Whether DOJ's supervisory chain was aware of that record — and if so, what steps were taken to ensure independent Brady review of her disclosure decisions in this case — is itself a material question. The Justice Manual places the Brady obligation on "the prosecution" collectively, not just on the individual AUSA. JM §9-5.001. A supervisory Brady review that deferred entirely to a prosecutor with a known

# Transcription of Handwritten Letter

*From Kailin Wang to AUSA Trina A. Higgins — Dated 6/20/2024*

*Editor's note: Transcribed verbatim from a handwritten scan. Words that were faint or illegible are marked with [illegible] or a best guess in brackets with a question mark. Spelling, grammar, and punctuation are preserved as written.*

## Envelope

Correctional Facility: Davis County Jail

Inmate Name: Kailin Wang #795329

Address: P.O. Box 130 [?]

City/State/Zip: Farmington, UT 84025

Postmark: SALT LAKE CITY UT 840 — 24 JUN 2024 PM 2 L

To: Trina A. Higgins

Office of the United States Attorney

111 South Main Street, Suite 1800

Salt Lake City, Utah 84111-2176

Note: Pete Reichman from your office handled State v. Wang Utah County Case no. 211100167

Stamp: RECEIVED — 2024 JUN 26 PM 3:06 — DISTRICT OF UTAH — U.S. ATTORNEY'S OFFICE

## Page 1

Kailin Wang #795329

Federal Inmate

Davis County Jail

P.O. Box 130

Farmington, UT 84025

RE: Jennifer K. Muyskens

USA v. Kailin Wang

Case 2:24-cr-00163-TS

Dear Trina A. Higgins,

There are many professional ethics concerns regarding U.S. Attorney Jennifer K. Muyskens. First, she improperly requested a protective order [Dkt. 25] with restrictions equivalent to a protective order in a child pornography case. She basically is prejudicing me by rendering me to be unable to properly defend myself in this case by requesting that I not being able to keep a copy of evidence to be used against me, a clear violation of my constitutional rights. Two, there is serious concern with provable lies and falsehoods presented by Muyskens at my motion to detain held on 5/29/24. While I'm sure many defendants complain about prosecutors, I respectfully state I do judge prosecutors objectively. Muyskens is prosecuting me on 2 counts of cyber stalking 18 USC 2261, doubling potential sentence charged as a repeat offender, and 2265(a) which date back to 2013, 2017. Clearly there is a statute of limitation issue and she prejudices me as now it's impossible to obtain forensic evidence to prove whether I'm the culprit of these allegations as IP addresses and even these websites no longer exist. Third, it's atrocious she is charging me as a repeat offender. Without you pulling up my PSI, I have no criminal convictions on my record, only pending charges with all due from  CT (V1) father of my 5-yr-old who certainly has motive to lie as he and I are involved in numerous family court child custody case which involve (and admitted in his Income/Expense declaration he has paid at least $600,000+ in litigation costs  to terminate my parental rights.

## Page 2

CT (V1) is the son of AT, former Google executive, now CEO of publicly traded Tech Company located in the Bay Area, who according to the sec.gov makes over $86 million annually. He is paying for CT's (V1's) and your so-called "victim's advocate" Douglas Rappaport. Attorney Jennifer Muyskens has outdone any prosecutor handling our cases (and I'm being prosecuted by some very experienced prosecutors). Jennifer just reads verbatim CT (V1)  lies without verification. I've not seen prosecutors do to such an extreme degree, this is there a conflict of interest because Douglas Rappaport is also representing CT (V1) in our family law case where he is requesting to basically termination of my parental rights and of course your office is helping him accomplish this by leveraging another criminal case, now up to 7 to 10+ year charges now, so I cannot be able to litigate my family court case now that CT (V1)  has moved internationally  to Denmark with the child. He obtained sole physical and legal custody of at an ex-parte hearing back on 3/6/19.  You know,  I have not complained about any prosecutor the way I am here, compared to the prosecutors prosecuting my other cases, i.e., State of Utah v. Wang 211100167, Tim Taylor lead DA in Utah County district attorney's office with 28-30 yrs of experience, and Donald A.

Dubain lead DA in the San Francisco DA's office who along with the current DA Brooke Jenkins ousted (progressive DA) Chesa Boudin. Duban also trains all the deputy assistant DA's in the San Francisco DA's office. Their conduct is literally angelic compared to Jennifer Muyskens who goes on and on and regurgitates CT (V1)  lies about other people without checking any of the verifiable facts.

## Page 3

See CT (V1) v. Wang Blogger


My purpose in writing you is, is it possible to switch to another U.S. attorney in your office to prosecute this case? Jennifer is deeply emotional and is abusing her prosecution discretion in handling this case. She lied to the court that I texted myself my naked pictures are online under a 562 number. That's completely false and if she just has the investigator look up that phone #, I guarantee it is not me texting myself. Jennifer also lied that I posted Christoffer['s?] address and pinned it. That's a lie. My charges about my report to the IC3 FBI for accusing Victim 1 CT (V1)  [of] posting on 3/6/19 (the same day he obtained custody ex-parte) and that I impersonate  WS (victim #2) in an anon post about me cutting out his tongue? That's totally false and the issue is has Jennifer conducted any search warrants on those posts? No, she did not, nor are subscriber IP address information obtainable after 5 years. This is also all litigated in People v. Wang 19016407. 2 search warrants for that exact same allegations charged in USA v. Wang were executed and so 3/6/19 "Kill baby K" post turned up a VPN that indicates that none of the 100,000 IP addresses obtained from 16  email addresses, ---which allegedly belongs to me. Why Utah is re-charging the exact same charges currently being prosecuted in California and re-charging fraudulently the perjury count in State of Utah v. Wang 211100167 is beyond me frankly. It's abuse of the incredibly wealthy CT (V1)  family utilizing AT's (V1's CEO father's) power to do this.

## Page 4

Nonetheless, I ultimately just want to be prosecuted fairly, ethically and Jennifer Muyskens is certainly not. I can hands down say she has been the worst prosecutor that's ever prosecuted me. I am giving specific examples. Jennifer lied even in the charging indictment and falsely alleges that I used fraudulent evidence to obtain restraining orders against victim #2 Walker Stone in January 2018. This is provably false as she is referring to Wang v. Stone filed, I think, 1/26/18, which not only did I obtain a 3-year permanent stalking injunction against Stone legitimately after an evidentiary hearing before the Honorable Judge Thomas Low of the 4th District Court on May 4, 2018. The certified transcripts also show the findings of fact that all 3 stalking injunctions were warranted against Victim #2 WS based on admissions to my allegations that Stone has admitted he contacted my coworker Nov. 2017 etc. So for Jennifer Muyskens to falsely charge me for this simply because of this allegations from CT (V1)'s [co-worker] attorney Douglas Rappaport is a (huge liar) when Muyskens could of simply looked up the Wang v. WS (V2) 1/22/18 case in the Utah state court portal, she would of realized my stalking injunction

request was certainly not obtained by fraud with no nude photos and certified transcripts proving this, and this is also from 2018 — that's 6 years ago. I expected better from the FBI. I don't ever see any IP addresses proving any of this.

## Page 5

has Muyskens conducted any discovery to be for the allegations on the criminal indictment, and if you are only using previous search warrant returns/discovery conducted by the San Francisco Police Detective Michelle Martinez from their case People v. Wang, then this case needs to be prosecuted by the Northern California 9th Circuit federal court as the evidence, the multiple police officers, discovery, physically stored and everything, as well all ALL of the alleged victims/witnesses are in California.

Lastly, prosecutors are held to a higher standard than even other attorneys; they are officers of the court. Jennifer Muyskens' overzealous prosecution conduct and I hope does not exhibit further vindictive prosecution conduct for this letter is written in good faith. I deeply request this office change prosecutors assigned to this case. Regardless, this case should be prosecuted in the correct jurisdiction, that's California, and I MUST have a copy of ALL of my evidence!!! And MUST be able to share it with any and all of my attorneys and to be usable in my family law case FDV-19-816416. You are looking at constitutional violations with this overbroad 6/4/24 (Dkt. 25) protective order in place. Rich Sorensen also did not obtain my consent for stipulating to this horrific protective order. This is discovery for my case. I MUST be able to see it.

Sincerely,

Dated: 6/20/24

Kailin Wang, defendant

pending disciplinary record for Brady violations is not a review at all. The institutional failure compounds the individual one, and both support the conclusion that the government's representation that the referral email is "internal" and "not discoverable" warrants the independent judicial assessment that *Pennsylvania v. Ritchie*, 480 U.S. 39, 57–58 (1987), and *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995), require.

## VIII. RELIEF REQUESTED.

For the reasons set forth herein and in the Renewed Motion, Ms. Wang respectfully requests that this Court: (1) order the government to disclose the identity of the local law-enforcement officer who emailed the FBI TFO on January 15, 2024; (2) order production of the complete investigative record of this prosecution's origins, including any referral logs, FBI case-opening documents, and communications between the FBI TFO and the referring officer; (3) in the alternative, conduct in camera review of that material; (4) direct disclosure of Board Docket No. 24-BD-038 (the Muyskens disciplinary proceedings) as Giglio material bearing on the integrity of the grand jury presentation; and (5) defer sentencing until disclosure is complete and Ms. Wang has had a reasonable opportunity to investigate the newly disclosed material and address its impact on the §2A6.2(b) enhancements.

Respectfully submitted,

April 24, 2026

/s/ Kailin Wang

 Gmail John Wang <yunlong88cong@gmail.com>

## Re: United States v. Wang, 2:24-cr-163 (D. Utah) – Request for Copy of June 2024 Jail Letter and Related Discovery (Rule 16 / Brady / Giglio)

**Blanch, Joey (USAUT)** <Joey.Blanch2@usdoj.gov> Wed, Mar 11, 2026 at 11:49 AM
To: John Wang <yunlong88cong@gmail.com>
Cc: Richard Sorenson <richard_sorenson@fd.org>

Ms Wang,

Attached is the letter you sent. I do not know if a copy was provided to your attorney, that would have been your responsibility as you were the defendant and the person sending the letter. Further, it is not something that required production back to you in discovery and/or under Brady, Giglio, and Rule 16 obligations. However, at your request, I am happy to provide it to you.

I tried to darken it in the scanner but because it was written in pencil it is difficult to scan. However, I believe it is still legible.

Best,

Joey L. Blanch | Assistant U.S. Attorney

111 S. Main St. Suite 1800 | Salt Lake City, UT 84111

(801) 524-5682 | joey.blanch2@usdoj.gov

[Quoted text hidden]

**Scan_1.pdf**
864K

# Transcription of Handwritten Letter

*From Kailin Wang to AUSA Trina A. Higgins — Dated 6/20/2024*

*Editor's note: Transcribed verbatim from a handwritten scan. Words that were faint or illegible are marked with [illegible] or a best guess in brackets with a question mark. Spelling, grammar, and punctuation are preserved as written.*

## Envelope

Correctional Facility: Davis County Jail

Inmate Name: Kailin Wang #795329

Address: P.O. Box 130 [?]

City/State/Zip: Farmington, UT 84025

Postmark: SALT LAKE CITY UT 840 — 24 JUN 2024 PM 2 L

To: Trina A. Higgins

Office of the United States Attorney

111 South Main Street, Suite 1800

Salt Lake City, Utah 84111-2176

Note: Pete Reichman from your office handled State v. Wang Utah County Case no. 211100167

Stamp: RECEIVED — 2024 JUN 26 PM 3:06 — DISTRICT OF UTAH — U.S. ATTORNEY'S OFFICE

## Page 1

Kailin Wang #795329

Federal Inmate

Davis County Jail

P.O. Box 130

Farmington, UT 84025

RE: Jennifer K. Muyskens

USA v. Kailin Wang

Case 2:24-cr-00163-TS

Dear Trina A. Higgins,

There are many professional ethics concerns regarding U.S. Attorney Jennifer K. Muyskens. First, she improperly requested a protective order [Dkt. 25] with restrictions equivalent to a protective order in a child pornography case. She basically is prejudicing me by rendering me to be unable to properly defend myself in this case by requesting that I not being able to keep a copy of evidence to be used against me, a clear violation of my constitutional rights. Two, there is serious concern with provable lies and falsehoods presented by Muyskens at my motion to detain held on 5/29/24. While I'm sure many defendants complain about prosecutors, I respectfully state I do judge prosecutors objectively. Muyskens is prosecuting me on 2 counts of cyber stalking 18 USC 2261, doubling potential sentence charged as a repeat offender, and 2265(a) which date back to 2013, 2017. Clearly there is a statute of limitation issue and she prejudices me as now it's impossible to obtain forensic evidence to prove whether I'm the culprit of these allegations as IP addresses and even these websites no longer exist. Third, it's atrocious she is charging me as a repeat offender. Without you pulling up my PSI, I have no criminal convictions on my record, only pending charges with all due from  CT (V1) father of my 5-yr-old who certainly has motive to lie as he and I are involved in numerous family court child custody case which involve (and admitted in his Income/Expense declaration he has paid at least $600,000+ in litigation costs  to terminate my parental rights.

## Page 2

CT (V1) is the son of AT, former Google executive, now CEO of publicly traded Tech Company located in the Bay Area, who according to the sec.gov makes over $86 million annually. He is paying for CT's (V1's) and your so-called "victim's advocate" Douglas Rappaport. Attorney Jennifer Muyskens has outdone any prosecutor handling our cases (and I'm being prosecuted by some very experienced prosecutors). Jennifer just reads verbatim CT (V1)  lies without verification. I've not seen prosecutors do to such an extreme degree, this is there a conflict of interest because Douglas Rappaport is also representing CT (V1) in our family law case where he is requesting to basically termination of my parental rights and of course your office is helping him accomplish this by leveraging another criminal case, now up to 7 to 10+ year charges now, so I cannot be able to litigate my family court case now that CT (V1)  has moved internationally  to Denmark with the child. He obtained sole physical and legal custody of at an ex-parte hearing back on 3/6/19.  You know,  I have not complained about any prosecutor the way I am here, compared to the prosecutors prosecuting my other cases, i.e., State of Utah v. Wang 211100167, Tim Taylor lead DA in Utah County district attorney's office with 28-30 yrs of experience, and Donald A.

Dubain lead DA in the San Francisco DA's office who along with the current DA Brooke Jenkins ousted (progressive DA) Chesa Boudin. Duban also trains all the deputy assistant DA's in the San Francisco DA's office. Their conduct is literally angelic compared to Jennifer Muyskens who goes on and on and regurgitates CT (V1) lies about other people without checking any of the verifiable facts.

## Page 3

See CT (V1) v. Wang Blogger


My purpose in writing you is, is it possible to switch to another U.S. attorney in your office to prosecute this case? Jennifer is deeply emotional and is abusing her prosecution discretion in handling this case. She lied to the court that I texted myself my naked pictures are online under a 562 number. That's completely false and if she just has the investigator look up that phone #, I guarantee it is not me texting myself. Jennifer also lied that I posted Christoffer['s?] address and pinned it. That's a lie. My charges about my report to the IC3 FBI for accusing Victim 1 CT (V1) [of] posting on 3/6/19 (the same day he obtained custody ex-parte) and that I impersonate WS (victim #2) in an anon post about me cutting out his tongue? That's totally false and the issue is has Jennifer conducted any search warrants on those posts? No, she did not, nor are subscriber IP address information obtainable after 5 years. This is also all litigated in People v. Wang 19016407. 2 search warrants for that exact same allegations charged in USA v. Wang were executed and so 3/6/19 "Kill baby K" post turned up a VPN that indicates that none of the 100,000 IP addresses obtained from 16 email addresses, ---which allegedly belongs to me. Why Utah is re-charging the exact same charges currently being prosecuted in California and re-charging fraudulently the perjury count in State of Utah v. Wang 211100167 is beyond me frankly. It's abuse of the incredibly wealthy CT (V1) family utilizing AT's (V1's CEO father's) power to do this.

## Page 4

Nonetheless, I ultimately just want to be prosecuted fairly, ethically and Jennifer Muyskens is certainly not. I can hands down say she has been the worst prosecutor that's ever prosecuted me. I am giving specific examples. Jennifer lied even in the charging indictment and falsely alleges that I used fraudulent evidence to obtain restraining orders against victim #2 Walker Stone in January 2018. This is provably false as she is referring to Wang v. Stone filed, I think, 1/26/18, which not only did I obtain a 3-year permanent stalking injunction against Stone legitimately after an evidentiary hearing before the Honorable Judge Thomas Low of the 4th District Court on May 4, 2018. The certified transcripts also show the findings of fact that all 3 stalking injunctions were warranted against Victim #2 WS based on admissions to my allegations that Stone has admitted he contacted my coworker Nov. 2017 etc. So for Jennifer Muyskens to falsely charge me for this simply because of this allegations from CT (V1)'s [co-worker] attorney Douglas Rappaport is a (huge liar) when Muyskens could of simply looked up the Wang v. WS (V2) 1/22/18 case in the Utah state court portal, she would of realized my stalking injunction

request was certainly not obtained by fraud with no nude photos and certified transcripts proving this, and this is also from 2018 — that's 6 years ago. I expected better from the FBI. I don't ever see any IP addresses proving any of this.

## Page 5

has Muyskens conducted any discovery to be for the allegations on the criminal indictment, and if you are only using previous search warrant returns/discovery conducted by the San Francisco Police Detective Michelle Martinez from their case People v. Wang, then this case needs to be prosecuted by the Northern California 9th Circuit federal court as the evidence, the multiple police officers, discovery, physically stored and everything, as well all ALL of the alleged victims/witnesses are in California.

Lastly, prosecutors are held to a higher standard than even other attorneys; they are officers of the court. Jennifer Muyskens' overzealous prosecution conduct and I hope does not exhibit further vindictive prosecution conduct for this letter is written in good faith. I deeply request this office change prosecutors assigned to this case. Regardless, this case should be prosecuted in the correct jurisdiction, that's California, and I MUST have a copy of ALL of my evidence!!! And MUST be able to share it with any and all of my attorneys and to be usable in my family law case FDV-19-816416. You are looking at constitutional violations with this overbroad 6/4/24 (Dkt. 25) protective order in place. Rich Sorensen also did not obtain my consent for stipulating to this horrific protective order. This is discovery for my case. I MUST be able to see it.

Sincerely,

Dated: 6/20/24

Kailin Wang, defendant

Correctional Facility Davis County Jail
Inmate Name Kallin Wang #495329
Address PO Box 130
City/State/Zip Farmington, UT 84025

SALT LAKE CITY UT 840
'24 JUN 2024 PM 2 L

To: Trina A. Higgins

Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176

Note: Pete Reichman from your office handled State v. Wang Perjury Count USA v. Wang

84111-217450

Kailin W[illegible]
Federal Inmate
Davis County Jail
P.O. Box 130
Farmington, UT 84025

Re: Jennifer K. Muyskens
USA v. Kailin Wang
Case 2:24-cr-00163-TS

Dear Trina A. Higgns,

There are many professional ethic concerns regarding U.S. attorney Jennifer K. Muyskens. First she improperly requested a protective order with restrictions equivalent to a protective order used in child pornography cases, she basically is prejudicing me by restricting me to be unable to properly defend my self in this case by requesting I not being able to review a copy of evidence to be used against me, a clear violation of my constitutional rights. Two, there is serious concern with provable lies, falsehoods presented by Muyskens at my motion to detain held on 5/29/24 while I'm sure many defendants complain about prosecutors, I respectfully state I do judge prosecutors objectively. Muyskens is prosecuting me on 2 counts of cyberstalking 18 USC 2261, doubling potential sentence charged as a repeat offender and 2265 (a) which date back to 2013, 2017, clearly there is a statue of limitation issue and she prejudices me as now its impossible to obtain forensic evidence to prove whether I'm the culprit of these allegations via IP addresses and even these websites no longer exist. Third its atrocious she is charging me as a repeat offender when if you pull up my PSI, I have no criminal convictions on my record, only pending charges with all are from Christoffer Thygesen (VI) Father of my 5 yr. old who certainly has motive to lie as he and I are involved in the most contentious family court child custody case which involve (and admitted in his income/expense declaration) he has paid at least $600,000 in litigation fees to terminate my parental rights.

Christoffer Thygesen is the son of Allan C. Thygesen former google executive, now CEO of DocuSign who according to the sec.gov makes over $86 million annually, he is paying for Christoffers so called "victims advocate" Douglas Rappaport, and your attorney Jennifer Muyskens has out done any prosecutor handeling our cases (and I'm being prosecuted by some very experienced prosecuters) Jennifer just reads verbatim Thygesen lies without verification [illegible] not seen prosecutors do to such a extreme degree, there is also a conflict of interest because Douglas Rappaport is [illegible] representing Christoffer in our family law case where [illegible] is requesting to basically termination of my parental rights and of course your office is helping him accomplish this by [illegible] up to 7 to 10+ year charges now so I cannot be able to litigate my family court case now that Thygesen has moved internationally to Denmark with the child, a child he obtained sole physical and legal custody of at an ex-parte hearing back on 3/6/19. Know I complain compared to the prosecutors prosecuting my other cases i.e.; State of Utah v. Wang 211100167, Tim Taylor lead DA in Utah County district attorneys office with 20-30 yrs of experience and Donald A. Dubain lead DA in the San Francisco DA's office who along with the current DA Brooke Jenkins ousted Chesa Boudin, Dubain also trains all the deputy assistent DA's in the San Francisco DA's office, thier conduct is literally angelic compared to Jennifer Muyskens who goes on and on and regurgitates Thygesen lies about other people without checking any of the verifiable facts

(2)

See Thygesen v. Wang Blogger

Look, my purpose in writing you is, is it possible to switch to another U.S. attorney in your office to prosecute this case? Jennifer is deeply [illegible] and is abusing her prosecution discretionary in handling this case, She lied to the Court that I texted myself my naked pictures are online under a 562 number, thats completely false and if she just has the investigator look up that phone# I guarantee it is not me texting my self. Jennifer also lied that I posted Victim #1 christoffer address and pinned it, thats a lie. My charges about my report to the IC3 FBI for accusing Victim 1 christoffer posting on 3/6/19 (the same day he obtained custody exparte) and that I impersonate Walker stone (victim #2) in an anon post about me cutting out his tongue? Thats totaly false and the issue is has Jennifer conducted any search warrants on those posts? No she did not, nor are subscriber IP address information obtainable after 5 years, this is also all litigated in People v. Wang 19016407, 20 search warrants for that exact same allegations charged in USA v. Wang were executed and the 3/6/19 "kill baby k" post turned up a vpn that matches none of the 20,000 IP addresses obtained from 16 email addresses which allegedly belongs to me. Why Utah is re-charging the exact same charges currently being prosecuted in California and re-charging fraudulently the perjury count in State of Utah v. Wang 211100167 is beyond me frankly its abuse of the incredibly wealthy Thygesen family abusing [illegible] Thygesens powers to do this

Nonetheless, I ultimately just want to be prosecuted fairly, ethically and Jennifer Muyskens is certainly not, I can hands down say she has been the most dishonest [illegible] that's ever prosecuted me, I am giving specific examples. Jennifer lied even in the charging indictment and falsely alleges that I used fraudulent evidence to obtain restraining orders against victim #2 Walker Stone in January 26, 2018, this is provably false as she is referring to Wang v. Stone filed I think 1/26/18 which not only did I obtain a 3 year permanent stalking Injunction against Stone legitimately after an evidentiary Hearing before the Honorable Judge Thomas Low of the 4th District court on May 7, 2018, the certified transcripts also show the findings of fact that all 3 stalking injunctions were warranted against victim #2 Walker Stone based on admissions to my allegations that Stone Harrassingly contacted my parents, my co-worker, & Tinder dates, etc. So for Jennifer Muyskens to falsely charge me for this simply because of false allegations from Christoffer Thygesen's & Suolhre attorney Douglas Rappaport (huge liar) when Muyskens could of simply looked up the Wang v. Stone [illegible] case in the Utah state court portal she would of realized my stalking Injunction request was certainly not obtained by fraud with court [illegible] and certified transcripts proving this and this is also from 2018 that's 6 years ago. I expected better from the FBI, I don't even see any IP addresses your office

has conducted lying [illegible] anything to me on the criminal indictment, and if you are only using previous Search warrant returns & discovery conducted by the San Francisco Police Sgt. Michelle Martinez from thier case People v. Wang [illegible], then this case needs to be prosecuted by the Northern California 9th circuit federal court as the ~~evidence~~ the multiple [illegible] officers, discovery, physically seized evidence as well all ALL of the alleged victims and witnesses are in California.

Lastly, [illegible] are held to a higher standard than even other attorneys; officers of the court. Jennifer Muyskens over zealous prosecution conduct and I hope does not exhibit further vindictive prosecution conduct for this letter is written in good faith. I deeply request this office change prosecutors assigned to this case, regardless this case should be prosecuted in the correct jurisdiction that is California and I MUST have a Copy of All of My evidence!!! And Must be able to Share it with any and all of my attorneys and usable in my Family law case FDV-19-8[illegible] You are looking at constitutional violations with this overbroad protective order in place, Rich Sorenson is also grossly in the wrong for stipulating to this horrific protective order.

Sincerely,

Dated: 6/20/24 Kailin Wang, defendant

This is (5) Discovery for my case I must be able to see it.